IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

KATHERINE WHITE,           *
                                      *
            Plaintiff,        *
                                      *
vs.                              *      No. 4:09CV00084 SWW
                                      *
LIFE INSURANCE COMPANY OF     *
NORTH AMERICA and LOCKHEED    *
CORPORATION LONG TERM        *
DISABILITY PLAN,                *
                                      *
            Defendants.      *

## Memorandum Opinion and Order

Plaintiff Katherine White ("White") filed this complaint on January 9, 2009, in the Circuit Court of Pulaski County, Arkansas, seeking a review of a decision terminating her Short-Term Disability ("STD") benefits and denying her claim for Long-Term Disability ("LTD") benefits under a plan offered through her employer, Lockheed Martin Corporation ("Lockheed"). Defendants removed the action to federal court on the basis that the claim is covered by the provisions of the Employee Retirement Income Security Act of 1974 (as amended), 29 U.S.C. § 1001 *et seq.* ("ERISA"). The administrative record has been filed with the Court and plaintiff filed a motion for summary judgment. Defendants responded with a brief.[1] For the reasons stated below, the Court finds that the motion should be denied and the decision should be affirmed.

## Background

---

[1]In ERISA cases, the parties are directed to file briefs according to a scheduling order such as that entered in this case. *See* docket entry 3.

During her term of employment with Lockheed, White was a participant in the defendant Lockheed Martin Corporation Disability Insurance Plan ("the Plan").  The Plan was funded by an insurance policy underwritten by defendant Life Insurance Company of North America ("LINA"), a CIGNA Company, and identified as Policy Number LK 008348.  LINA is a foreign corporation licensed to do business in Arkansas and the Plan is a welfare benefits plan as that term is defined in ERISA.

Plan participants are eligible for STD benefits if they meet the definition of disability as set forth in the Plan.  An employee is considered disabled if  "because of Injury or Sickness, he or she is unable to perform each and every material duty of his or her regular occupation."  Administrative Record ("AR") at 0557.  An employee has 180 days to appeal the denial of an application for STD benefits.  AR at 0555; 0558.  Similarly, in order to qualify for LTD benefits, an employee must meet the following definition as set forth in the Plan:

> For purposes of coverage under the Policy, you are Disabled if, because of Injury or Sickness, you are unable to perform each and every material duty of your regular occupation.  After Monthly Benefits have been payable for 24 months, you are Disabled if your Injury or Sickness makes you unable to perform all the material duties of any occupation for which you may reasonably become qualified based on education, training or experience.

AR at 0160.  An employee must be disabled from her own occupation in order to initially qualify for LTD benefits.  After 24 months, an employee must be disabled from any occupation in order to continue to receive LTD benefits.

Disability benefits are paid in accordance with the terms of the Plan once LINA receives satisfactory proof that an employee is disabled.  AR at 0163.  LINA has complete discretion to

determine eligibility under the Plan and entitlement to Plan benefits in accordance with the terms of the Plan.  AR at 0173.

Plaintiff worked for Lockheed as a computer analyst.  Her job required her to perform "a variety of financial activities in more than one functional area of Finance, such as cost accounting, tax accounting, general accounting, financial analysis, and/or budgeting."  AR at 0515.  Her job was sedentary.  *Id.*

On or around June 29, 2004, White applied for STD benefits.  AR 0623-24.  Because there was a zero waiting period for STD benefits, White was approved for those benefits from June 21, 2004, through July 4, 2004.  AR at 0620.  She was instructed that if she was unable to return to work on July 5, 2004, she would need to have her treating physician complete certain paperwork evidencing her inability to return to work.  *Id.*

Plaintiff submitted a Follow-Up Medical Request Form from Dr. Kevin Nickell, a urologist, dated July 30, 2004.  AR at 0619.  Dr. Nickell indicated White's condition was unchanged, and that she was taking Darvocet, Zoloft, Elmiron, and Atarax.  *Id.*  The only restrictions on White's abilities identified by Nickell were that she could not perform any lifting, stretching or bending at work.  *Id.*  Dr. Nickell's stated he was referring White to another urologist, Dr. Christopher Smith, for further evaluation.  Plaintiff also compiled and submitted a list of her medical complaints and the treatment she had received for those complaints since 2001.  AR at 0615-18.  Plaintiff stated that her medical complaints were urinary frequency, urgency and pain; lower back pain; pelvic and abdominal pain; pain in upper body-recurring shingles; visual disturbances; fatigue; twitching; painful intercourse; heartburn; IBS; and nosebleeds.  She noted a long history (over five years) of chronic bladder infections.  AR at 0615-16.  Plaintiff indicated she had been seeing Dr. Maneesh Patel, her primary

3

care physician, since February 2004 for urinary frequency, urgency and pain, lower back pain, depression, fatigue and twitching. *Id.*

Dr. Patel submitted a letter to LINA dated October 28, 2004. AR at 0608. Dr. Patel stated White had been his patient since January 12, 2004, however, he did not submit any medical records. *Id.*[2] In his letter, Dr. Patel indicated that on September 14, 2004, White was evaluated by Dr. Nickell and found to have symptoms consistent with interstitial cystitis. *Id.* Dr. Patel said White's prognosis was unpredictable, and that her ability to return to work was unpredictable. *Id.* Dr. Patel indicated that White told him that another one of her treating physicians, Dr. Vladamir Redko, considered a possible diagnosis of fibromyalgia. *Id.* Dr. Patel referred LINA to Dr. Nickell and Dr. Redko for further information. *Id.*

Plaintiff apparently voluntarily resigned from her position at Lockheed on September 1, 2004. AR at 0571-2. LINA informed White by letter dated October 15, 2004, that her file was closed as of August 31, 2004, because her employment with Lockheed terminated on that date, and under the Plan, STD coverage ends on the date an employee's employment ends. AR at 0610. The letter was sent to White at her address on file in Houston, Texas. *Id.* The letter informed White that if she was still disabled on November 19, 2004, she could file a claim for LTD benefits. *Id.*

On October 21, 2004, White submitted medical records to LINA from Dr. Nickell. AR at 0603-07. The records consisted of notes from two office visits, dated July 15, 2004, and July 30, 2004, and an operative report dated July 19, 2004. In the July 15 office note, Dr. Nickell indicated a possible diagnosis of interstitial cystitis and recommended a cystoscopy and hydrodistention, which

---

[2]LINA sent a request to Patel on October 15, 2004, for his medical records but did not receive any information responsive to the request. AR at 0611.

he performed on July 19, 2004.  His post-operative diagnosis was lower urinary tract irritative symptoms.  *Id.*  Dr. Nickell noted White was feeling "about the same" during her office visit on July 30, 2004, and that she was to follow up with Dr. Smith in two weeks.  *Id.*

Plaintiff also submitted medical records from Dr. Redko, including two MRI reports.  AR at 0596-0602.  In the undated History and Physical, Dr. Redko diagnosed White with having fibromyalgia and interstitial cystitis.  He ordered MRIs of the thoracic and lumbar spine and prescribed Neurontin and Robaxin for pain management.  *Id.*  The MRI of the thoracic spine indicated mild anterior spondylosis at the T8-9 and T9-10 disks, but was otherwise normal.  AR at 0598.  The MRI of the lumbar spine indicated mild posterior disk bulges at the L4-5 and the L5-S1 disks with very mild effacing of the anterior thecal sac.  AR at 0599.  During her follow-up visit with Dr. Redko on September 7, 2004, he recommended increasing White's Neurontin and continued her Robaxin and Zoloft.  AR at 0316, 0597.

Plaintiff sent a letter to LINA dated October 22, 2004, from Dr. Noel Ferguson, a urologist at the Harrison, Arkansas, Urology Clinic.  AR at 0595.  He stated he had seen White on that date, and that she had a history of interstitial cystitis.  *Id.*  Dr. Ferguson said he was trying to get her an appointment with Dr. William Money at the Pain Control Clinic in Fayetteville, Arkansas "in an effort to try to get her bladder and back pain under control."  *Id.*  Dr. Ferguson did not send any medical records.

LINA referred White's information to Dr. John Mendez on October 28, 2004, for a medical review of her benefits claim.  Dr. Mendez noted there were no medical records that coincided with the alleged onset of White's disability - June 13, 2004.  AR at 0586-87.  He further noted that

medical records subsequent to the disability onset date did not indicate any significant restrictions on White's ability to perform her job.  *Id.*

On October 28, 2004, LINA sent another letter to White at her Houston address informing her that her claim for STD benefits was being denied because there was no medical documentation to support a finding that White was disabled from her own occupation.  AR at 0557-59.  LINA indicated it had reviewed the information provided by her physicians but there was no evidence of any significant restrictions from the physical demands of her work duties.  *Id.*    LINA informed White of her right to appeal the decision within 180 days.  *Id.*  LINA heard nothing from White and closed its file.  AR at 0585.

In April 2006, White's husband contacted LINA.  AR at 0572.  On May 10, 2006, he wrote a letter to LINA, stating White's "benefits were mistakenly discontinued due to a misunderstanding when out of respect for her employer Lockheed Martin, she informed them that she was too sick to work and that they would need to find someone to fill her position.  *Id.* at 0571.  He said White was "just as disabled today as she was at the time of the misunderstanding that caused the termination of benefits as the medical record shows."  *Id.*  He indicated White was appealing LINA's decision to discontinue her STD benefits and requested that LINA reinstate her benefits.  *Id.* LINA responded to the letter on May 17, 2006, informing White that her appeal was over 180 days from the date of denial and that LINA would need an explanation for the delay before it could consider her appeal. AR at 0569.

Plaintiff responded that she never received the October 28, 2004, letter denying her benefits because it was mailed to her old address in Houston, Texas.  AR at 0556.  LINA responded that there was nothing in the record to indicate she had submitted a new address in writing and that her appeal

was untimely.  AR at 0555.  Plaintiff then applied for LTD benefits, and on June 19, 2006, LINA informed White that it had received her application but that additional information was needed.  AR at 0540.  LINA enclosed several forms including a medical disclosure authorization for White to complete and return to LINA.  *Id.*

On July 26, 2006, after receiving the signed medical authorization, LINA requested medical records from White's treating physicians: Dr. Susan Raben-Taylor, Dr. Ferguson, Dr. Smith, Dr. Patel, Dr. David  Millstein, Dr. Ho, Dr. Stephen Mark Cone, and Dr. John Brizzolara.  AR at 0477-0502.  LINA did not receive any information from any of these doctors in response to its requests.  AR at 0451.

On August 9, 2006, a nurse case manager reviewed White's file and found that the medical records did not support a finding that White was unable to perform all of the duties of her own occupation.  AR at 0470-0472.  LINA informed White on August 10, 2006, that it was denying her claim for LTD benefits because the medical records did not support a finding that White was disabled from her job.  AR at 0450-0453.

Plaintiff appealed LINA's decision.  AR at 0397-0399.  In support of her appeal, White enclosed various medical records. The only medical information which had not been provided previously to LINA included office notes from Dr. Raben-Taylor, a pain management specialist; office notes from Dr. Millstein, a urologist; office notes from Dr. Cone, a gynecologist; and a copy of a June 16, 2004, ultrasound exam.  AR at 0400-0447.

Dr. Taylor's records show White saw her approximately once a month from November 2004 through August 2006.  AR at 0406-0420.  On November 3, 2004, Dr. Taylor noted a diagnosis of "probable interstitial cystitis."  AR at 0407.  Dr. Taylor refilled White's prescriptions but said she

would not to use narcotics to treat White.  *Id.*  On December 9, 2004, Dr. Taylor said she would require White to have a psychological evaluation before writing pain medication prescriptions.  AR at 0406.  On January 13, 2005, White reported she had seen a psychologist in connection with her application for Social Security disability benefits, but Dr. Taylor noted it was not for treatment and that White may need to see someone for treatment.  Dr. Taylor refilled White's prescriptions and added Darvocet to be taken as needed.   AR at 0408.  Plaintiff continued to see Dr. Taylor regularly through August 2006 to have her medications checked and refilled.  AR at 0406-0420.

Dr. Taylor's records included a Fibromyalgia Impairment Questionnaire she completed in September 2005 in connection with White's application for Social Security benefits.  AR at 0430-0435.  Dr. Taylor indicated White could sit continuously for two hours in an eight hour day, stand/walk continuously for two hours in an eight hour work day, and that White would need to move frequently.  AR at 433.  In response to the question, "Are there any other limitations that would affect your patient's ability to work at a regular job on a sustained basis?," Dr. Taylor noted White suffered from "unknown psychological limitations."  AR at 0434.

Dr. Millstein's records show White saw him four times between June and October 2005.  On June 3, 2005, Dr. Millstein noted he "discussed all the possibilities present" with White and her husband and that there was "no hard and fast diagnosis . . ." AR at 0423.  Dr. Millstein noted during his August 2, 2005, examination that the "problem here is that there is no great answer for [White]." AR at 0424.  Dr. Millstein noted White should be evaluated by "a neurologist in a major institution." *Id.*  Dr. Millstein prescribed Hydrocodone to White on September 16, 2005.  AR at 0425.  He indicated he would like Dr. Taylor to begin White on a long-acting pain medication with less gastrointestinal side effects, said he was attempting to get White to see another pain clinic for

evaluation, and suggested she needs to find a family physician.  *Id.*  Dr. Millstein saw White on

October 18, 2005, and refilled her Hydrocodone prescription for a few days to carry her to her next

appointment with Dr. Taylor.  AR at 0427.

According to the records, White saw Dr. Cone on May 27, 2004, and June 16, 2004.  He

noted White's complains of bladder pain and referred her to Dr. Smith for treatment.  AR at 0446.

Dr. Cone performed an ultrasound of White's pelvic area on June 16, 2004.  *Id.*

Plaintiff requested a copy of LINA's claim file which it sent to her on October 20, 2006.  AR

at 0387.  After reviewing the file, White resubmitted the July 19, 2004, operative report from Dr.

Nickell which White claimed supported her diagnosis of interstitial cystitis. She also submitted

bladder photographs taken during the July 19, 2004, procedure performed by Nickell.  AR at 0376-

78.  Plaintiff sent an operative report dated July 1, 2001 from Dr. Stephen Mark Cone with

photographs which White claims evidence her diagnosis of severe pelvic adhesive disease.  AR at

0379-80.

LINA requested a medical review of White's appeal on November 3, 2006.  AR at 0373-74.

 Dr. John Mendez and Karen Haley, R.N., reviewed the medical information contained in White's

file and made the following findings:

> Provided medical records related to the BWP include 6/16/04 handwritten note from
> gynecologist reporting persistent pain/dysuria, frequency, and pelvic pain.  Pelvic
> tenderness found on exam.  7/19/06 cystoscopy diagnosed lower urinary tract
> irritative symptoms without noted abnormal physical findings on the narrative report
> except for mild terminal efflux of bloody urine. 9/7/04 note from Dr. Redko, pain
> management physician, notes diagnosis of fibromyalgia and pelvic pain.  His general
> physical exam reported no significant physical abnormalities. 10/9/04 letter from Dr.
> Patel notes an unpredictable prognosis from interstitial cystitis symptoms and
> unpredictable ability to return to work.

He also noted that fibromyalgia was being considered as a possible diagnosis. His letter did not document any significant physical, cognitive and/or psychological limitation. 10/22/04 note indicates interstitial cystitis present since 1999. 11/3/04 note from Dr. Susan Taylor reports a history of blood in the urine and urinary retention. Exam findings consisted of normal vital signs and note that urine was clear with minimal residual urine. 12/9/04 note from same physician reports cervical spine tightness without significant cervical spine range of motion limitations. Also, normal motor strength and no significant range of motion deficits noted in any of the areas examined. Absent documentation of significant physical, cognitive or psychological deficits, such as range of motion and/or strength deficits and/or abnormal cognition or other deficits on mini-mental status examination/MMSE, no work restrictions are medically supported during the BWP.

AR at 0373-74. Dr. Mendez concluded that the medical records did not support a finding that White was disabled from performing her sedentary job as a computer analyst.

LINA informed White on November 13, 2006, that it was reaffirming its August 10, 2006, denial of benefits. AR at 0369-71. Plaintiff requested another copy of her claim file which was sent to her on March 22, 2007. On May 4, 2007, White again appealed LINA's decision. AR at 0356-59. Plaintiff took issue with a number of statements in the findings and asserted Dr. Mendez was not qualified to review Dr. Nickell's operative report. She did not include any new or additional medical records other than a narrative report from Dr. Taylor dated January 30, 2007, in which Dr. Taylor reiterated her findings from the September 2005 Fibromyalgia Impairment Questionnaire. AR at 0360. Plaintiff also submitted the decision of the Social Security Administration ("SSA") approving her application for Social Security Disability Insurance benefits. AR at 0326-30. LINA upheld its decision on August 9, 2007, and informed White she had exhausted all of her administrative appeals. AR at 0302-03. Plaintiff requested another copy of her claim file which was mailed to her on September 14, 2007. AR at 0298-300.

Plaintiff filed a complaint against LINA with the Arkansas Insurance Department on December 26, 2007.  AR at 0292-96.  Although LINA asserted it had done nothing wrong with respect to White's claim, LINA agreed to refer her claim for an independent medical review.  AR at 0263; 259-60. After reviewing all White's medical records, Dr. Lisa Gill made the following determinations:

> Based on the documentation for review, the claimant worked up until June 2004 despite having intractable interstitial cystitis and her other chronic symptoms for years prior.  Based on the clinicals, there has not been any acute medical or pain management change or decompensation after June 2004, as compared to before June 2004, to warrant restrictions and limitations beginning in 6/04.  She had a history of multiple urological procedures and surgeries long before 6/04.  There has been no documented change in her overall condition, medications, lab work, or diagnostic studies after 6/04.  Her work evaluation rates her capable of sedentary duty at a minimum.  Her impairments are chronic and predate June 12, 2004.

AR at 0255-57.  Dr. Gill concluded that White's medical records did not support a finding that she was unable to work at her sedentary position.  *Id.*  LINA informed White on May 14, 2008, that it was upholding its previous decision to deny benefits.  AR at 0252-54.

### Standard of Review

The Supreme Court has stated that "a denial of benefits challenged under [20 U.S.C.] § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary "discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989).  If the plan confers such discretionary authority, then the Court must defer to the determination made by the administrator or fiduciary unless such determination is arbitrary and capricious.  *Id.  See also Lutheran Med. Ctr. v. Contractors, Laborers, Teamsters and Engineers Health and Welfare Plan,* 25 F.3d 616 (8th Cir. 1994).

11

It is undisputed that the policy gave LINA discretionary authority over determinations concerning eligibility for benefits and construal of the policy's terms.  Regardless of the presence of a conflict of interest, the abuse-of-discretion standard remains the appropriate standard of review for evaluation of an ERISA fiduciary's decision.  In evaluating such a decision, however, a court should take various "case-specific" factors into consideration, "considering the conflict as one factor to determine whether the administrator abused its discretion."  *Chronister v. Unum Life Ins. Co. of America,* 563 F.3d 773, 775-76 (8th Cir. 2009)(quoting *Metropolitan Life Ins. Co. v. Glenn,* ___ U.S. ___, 128 S.Ct. 2343, 2351 (2008)) and citing *Wakkinen v. UNUM Life Ins. Co. of America,* 531 F.3d 575 (8th Cir. 2008).

> To determine whether a plan administrator's decision was arbitrary and capricious, 'we ask whether the decision to deny ... benefits was supported by substantial evidence, meaning more than a scintilla but less than a preponderance.' 'Provided the decision 'is supported by a reasonable explanation, it should not be disturbed, even though a different reasonable interpretation could have been made.'' 'The requirement that the [plan administrator's] decision be reasonable should be read to mean that a decision is reasonable if a reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision.'

*Midgett v. Washington Group Intern. Long Term Disability Plan,* 561 F.3d 887,897 (8th Cir. 2009)(internal citations and quotations omitted).

### Discussion

Plaintiff seeks review of LINA's decisions to discontinue her STD benefits and to deny her LTD benefits.

### 1.    Claim for STD Benefits

Plaintiff argues that the decision to terminate her STD benefits was an abuse of discretion because LINA discounted the reports and findings of her treating physicians and mailed the October 28, 2004, letter denying her STD benefits to her old address.[3]

LINA approved White's claim for STD benefits for the period June 21, 2004, through July 4, 2004, under the Plan's zero day benefit waiting period.  LINA informed White that in order to receive STD benefits beyond July 4, 2004, she would need to submit medical documentation that she was unable to return to work.  LINA determined that the medical evidence White submitted did not indicate she was disabled as of June 29, 2004, nor did her physicians opine that she was unable to perform her sedentary job as a computer analyst. Plaintiff admitted she suffered from urinary pain, frequency and urgency and had sought medical attention for these conditions since as early as 2001.  There is no medical documentation that White's four-year condition had changed as of the date she applied for STD benefits, June 29, 2004.[4]   There is no objective medical evidence that White was disabled as of June 29, 2004, and none of her physicians indicated she could not perform her sedentary job as a computer analyst. Plaintiff's medical records were reviewed by a physician who determined that there were no significant restrictions on White from performing her work duties.

---

[3]Plaintiff also complains LINA mailed the October 15, 2004, letter terminating her STD benefits to her old address.  *See* Pl's. Br. at p. 17.  The records reflects White continued to provide medical information to LINA in support of her claim for STD benefits up to October 26, 2004.  AR at 588.

[4]Plaintiff states she reduced her work hours from 40 hours to 32 hours per week from October - November 2003, and from 32 hours to 24 hours per week from February 2004 through August 2004 while under the care of her treating physicians.  AR at 0615-18.  There is nothing in the record from Lockheed or her physicians confirming that White's work hours were reduced.

Citing *Barnes v. Hartford Life Ins. Co.*, Case No. 4:04cv1114 JLH (E.D.Ark. filed October 7, 2005), White argues the decision to terminate her STD benefits was an abuse of discretion because there is no evidence that her condition changed between the time she received STD benefits and LINA's termination of them. While Eighth Circuit precedent requires a significant change in the information available to the insurer between the granting and terminating of benefits, *see Morgan v. Unum Life Ins. Co. of Am.*, 346 F.3d 1173, 1178 (8th Cir. 2003), here LINA never made a determination that White was entitled to STD benefits.[5] The Court finds LINA's decision to deny White's claim for STD benefits was not an abuse of discretion.

The Court further finds LINA's conclusion that White did not timely appeal the October 28, 2004, denial of STD benefits was not an abuse of discretion. There is nothing in the record to indicate LINA had anything in writing notifying it of White's new Arkansas address,[6] and White does not dispute that she received other documents sent to her Houston address between June 25, 2004, the date of the alleged address notification, and October 28, 2004, the date of the denial letter.

**2.      Claim for LTD Benefits**

---

[5]To the extent plaintiff asserts *Barnes* in support of her argument regarding LTD benefits, the Court makes the same determination.

[6]The record reflects telephone contacts between LINA and White, AR at 0022, 0065, 0068-70, and 0072; and a telephone contact between White and Lockheed. AR at 0073. Plaintiff refers to AR at 0002 as evidence that LINA had her new address on file on June 25, 2004, but LINA's explanation that the notation "Created 06/25/2204" on the employee file printout that shows plaintiff's Harrison address refers to the date the file was opened. The printout reflects the information current on the date the file was printed, January 22, 2009.

Plaintiff argues LINA abused its discretion in denying her LTD benefits by ignoring the findings of the SSA that she is disabled, discounting the reports and findings of her treating physicians, and crediting the medical review performed by Dr. Gill.  As discussed above, White submitted no medical evidence that she was disabled from her own occupation at the time she ceased working.  None of White's eight treating physicians whom LINA contacted after she filed her claim responded to its request for medical information.  After its initial denial, LINA received additional records from three of White's treating physicians, but these records do not evidence she is disabled under the Plan.  Dr. Taylor, the pain management specialist, noted some restrictions but they did not prohibit White from working in a sedentary job.  The other two, Dr. Millstein and Dr. Cone placed no restrictions on White and issued no opinion regarding her ability to work.  Plaintiff's claim was reviewed three separate times - by a nurse case manager, Dr Mendez, and Dr. Gill.  None found medical evidence to support any restrictions on White's ability to work to perform her job.

LINA is not required to give deference to White's treating physicians.  "The rule is not that a treating physician's opinion trumps all other evidence but that a court must give it appropriate weight." *Conley v. Pitney Bowes,* 176 F.3d 1044, 1049 (8th Cir. 1999). ERISA does not impose a "heightened burden of explanation on administrators when they reject a treating physician's opinion." *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 823 (2003).  In any event, the only restrictions placed on White were by Dr. Nickell in his July 30, 2004, report that White should not lift, stretch, or bend at work, and by Dr. Taylor who indicated on a 2005 Fibromyalgia Impairment Questionnaire that White should not sit, stand or walk continuously for

more than two hours at a time.  Both Dr. Mendez and Dr. Gill independently determined that

these restrictions did not preclude White from working in a sedentary position.

Plaintiff complains LINA abused its discretion by retaining Dr. Gill and relying on her

independent medical review.  Plaintiff takes issue with the fact that Dr. Gill is an osteopathic

doctor and not a urologist.[7]  She submits no evidence, however, that Dr. Gill does not possess the

necessary medical training and experience to analyze the information provided by White's

various doctors.  Further, there is no evidence that any of White's urologists placed any work

restrictions on White or suggested that she was incapable of performing a sedentary job.

Plaintiff argues the facts of her case are similar to those in *Alfano v. Cigna Life Ins. Co.,*

No. 07 Civ. 9661(GEL), 2009 WL 222351 (S.D.N.Y. January 30, 2009), where the court, in a *de*

*novo* review, reversed a decision to deny continued LTD benefits.  The *Alfano* court found the

plan administrator's reliance on a functional capacity evaluation was misplaced and noted

extensive medical evidence supporting the plaintiff's claim that he was disabled.  Plaintiff

contends LINA's reliance on Dr. Gill's assessment similarly is inconsistent with the medical

evidence in her case. Unlike *Alfano*, the standard of review here is abuse of discretion, and there

is no "extensive" medical evidence that White is disabled.  All of White's objective medical

reports are essentially normal, and none of her treating physicians stated she could not perform

her sedentary job.  All of the reviewing medical professionals concluded that the records did not

support any restrictions that would preclude White from working in her sedentary position.

---

[7]Department of Labor regulations state that "the appropriate named fiduciary shall consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment."  29 C.F.R. § 2560.503-1(h)(3)(iii).

Plaintiff also argues LINA abused its discretion by ignoring the SSA's determination that White is disabled.  The Eighth Circuit has acknowledged that a plan administrator must render its decision based on the terms of the plan, terms that are separate and distinct from the standards applied by the SSA.  *See Coker v. Metropolitan Life Ins. Co.,* 281 F.3d 793 (8th Cir. 2002)(SSA determination that claimant suffers pain-based disability does not require ERISA plan administrator to reach same conclusion). The Supreme Court has recognized that SSA determinations rely upon criteria that are unique to the Social Security context.  *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 833-34 (2003)(explaining that the SSA measures a claim for benefits "against a uniform set of federal criteria," while ERISA claims turn "on the interpretation of terms in the plan at issue"); *Cleveland v. Policy Mgmt. Sys. Corp.,* 526 U.S. 795, 804 (1999)(noting that the SSA's procedures "inevitably simplify" the evaluation of claims because the SSA receives a large number of claims every year and its resources are limited).  In *Nord*, the Court noted: "It is the Secretary of Labor's view that ERISA is best served by preserving the greatest flexibility possible for . . . operating claims processing systems consistent with the prudent administration of a plan."  538 U.S. at 833 (internal quotations and citations omitted).  LINA is not obligated to follow a conclusion reached by the SSA.

"It is well settled that in ERISA cases a reviewing court may not substitute [its] own weighing of the evidence for that of the administrator." *Willcox v. Liberty Life Assur. Co. of Boston,* 552 F.3d 693, 702 (8th Cir.2009)(internal citation omitted).  The Court finds LINA's decisions are supported by substantial evidence and should be affirmed.

## Conclusion

17

For the reasons stated, the Court hereby affirms the decisions denying plaintiff benefits.

Plaintiff's motion for summary judgment is denied.

SO ORDERED this 16th day of October, 2009.


/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE